IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

ANNA R. YANTA                                                                      PLAINTIFF

v.                      6:14-cv-6075-BAB

CAROLYN W. COLVIN, Acting Commissioner
Social Security Administration                                          DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Anna Yanta, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability, and disability insurance benefits ("DIB") under the provisions of Title II of the Social Security Act ("Act"). The Parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (ECF No. 5).[1] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**I.     Background:**

Plaintiff protectively filed her application for DIB on May 17, 2011, alleging an onset date of March 21, 2011, due to bone spurs in her feet, back problems, knee problems, hip problems,

---

[1] The docket numbers for this case are referenced by the designation "ECF No. __." The transcript pages for this case are referenced by the designation "Tr."

muscle spasms, and carpal tunnel syndrome ("CTS") in her right hand. (Tr. 9, 122). For DIB purposes, Plaintiff retained insured status through December 31, 2014. (Tr. 11, Finding 1). Plaintiff's application was denied initially and on reconsideration. An administrative hearing was held on December 11, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 23-53). A vocational expert ("VE") was also present and testified.

On February 19, 2013, the Administrative Law Judge ("ALJ") entered an unfavorable decision. (Tr. 9-19). In this decision, the ALJ determined Plaintiff had the severe impairments of osteoarthritis, de Quervain's syndrome status post release surgery, plantar fasciitis, Achilles tendonitis, mild degenerative disc disease, and obesity. (Tr. 11, Finding 3). After reviewing all of the evidence presented, however, the ALJ determined Plaintiff's impairments did not meet or equal the level of severity of any impairment listing. (Tr. 13, Finding 4).

The ALJ next evaluated Plaintiff's subjective complaints and determined her RFC. (Tr. 13-17). The ALJ first evaluated Plaintiff's subjective complaints and found she was not entirely credible. The ALJ then found Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following limitations:

> the claimant cannot climb ladders or work around hazards such as unprotected heights or dangerous machinery. The claimant can occasionally balance, stoop, kneel, crouch, crawl, climb stairs, and push/pull with her right dominant arm. The claimant must be able to alternate, at will, between sitting and standing throughout the workday. She occasionally uses a cane to walk and is able to carry small objects with her other free hand. (T. 13).

With the help of the VE, the ALJ determined Plaintiff could not perform her past relevant work ("PRW"). (Tr. 17-18, Finding 6). Based on the VE's testimony, the ALJ found Plaintiff could perform the requirements of the representative occupation of cashier II. (Tr. 18-19, Finding 10).

The ALJ then concluded Plaintiff was not disabled. (Tr. 19, Finding 11).

On February 19, 2013, Plaintiff requested the Appeals Council review the ALJ's unfavorable decision, which denied the request on April 1, 2014. (Tr. 1-4). On June 6, 2014, Plaintiff filed the present appeal. (ECF No. 1). The Parties consented to the jurisdiction of this Court on June 6, 2014. (ECF No. 5). Both Parties have filed appeal briefs, and the case is ready for decision. (ECF Nos. 10, 11).

**II.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance, but it is enough a reasonable mind would find it adequate to support the Commissioner's decision. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record to support the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record to support a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

To determine whether a claimant suffers from a disability, the Commissioner uses a five-step sequential evaluation. She determines: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the RFC to perform her PRW; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform. 20 C.F.R. §§ 404.1520(a)-(f); *Cox*, 160 F.3d at 1206. The fact finder only considers Plaintiff's age, education, and work experience in light of her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920.

### III. Discussion:

Plaintiff argues the ALJ erred by not addressing if Plaintiff met Listing 1.02 (major dysfunction of the joints), and improperly discounted her subjective complaints. (ECF No. 10 at 4-19).

**A. Listing 1.02**

The ALJ addressed Plaintiff's joint conditions, and considered her ability to walk and perform manipulative functions in detail, but found Plaintiff did not meet the requirements of a Listing. (Tr. 11-13, 15-17, Finding 4). The record supports the ALJ's conclusion Plaintiff does not meet the criteria of a Listing.

Plaintiff has the burden to establish her impairment meets or equals an impairment listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990). There is no error when an ALJ fails to address

a listing so long as the record supports the ALJ's overall conclusion. *Pepper v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003). Listing 1.02 requires a major joint dysfunction characterized by:

> [a] gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively;
>
> OR
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively. 20 C.F.R. Part 404, Subpart P, App. 1, § 1.02.

Examples of ineffective ambulation include "the inability to walk without the use of a walker, [or] two crutches or two canes; . . . [or] the inability to carry out routine ambulatory activities, such as shopping and banking." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(b)(1). As for the "inability to perform fine and gross movements effectively," the Listing requires "an extreme loss of function of both upper extremities," such as having an "inability to prepare a simple meal and feed oneself." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(c).

At the hearing, Plaintiff testified she occasionally uses a cane when she walks due to pain in her heels, and can walk "with or without her cane, maybe a hundred feet, a hundred and fifty feet." (Tr. 33, 35, 44). On her function report, Plaintiff described activities of daily living such as performing house hold chores, visiting the bank, grocery store and post office on a regular basis, and shared she uses a cane only when her pain is at its most severe. (Tr. 134-136, 138). Plaintiff also testified she has some problems with pain in her right hand, but is able to write and use a keyboard

and mouse. (Tr. 40-41).

The medical evidence similarly undermines Plaintiff's argument she meets Listing 1.02. Plaintiff was diagnosed with heel bursitis and plantar fasciitis by her treating physician, Dr. John Wright, in May 2011 based on her complaints of chronic pain, but was ambulatory. (Tr. 157-158). Plaintiff was also examined by Dr. R. Paul Tucker, a consulting physician, in June 2011, who determined Plaintiff had normal range of motion in her upper extremities, negative straight leg raises, and the ability to perform all fine manipulative functions. (Tr. 169-171). Although Plaintiff walked with a limp in her right leg, Dr. Tucker noted "she walks reasonably well." (Tr. 171-172). Dr. Tucker also opined Plaintiff "gets around fairly well" despite a tremor in her right hand and bone spurs, and concluded her limitations were "mild to moderate." (Tr. 172).

June 2011 x-rays of Plaintiff's knees were normal, and a physical exam by Dr. Ronald Finch in August 2012 showed Plaintiff walked with a normal gait. (Tr. 190-191). After a right wrist tendon release operation in August 2012, medical notes from Dr. Michael Young show Plaintiff had good range of motion in her wrist. (Tr. 209). At the visit, Dr. Young also recommended only orthopedic inserts to treat Plaintiff's foot pain. (Tr. 209-210). At a follow-up visit in November 2012, Dr. Young noted Plaintiff's knee x-rays only showed early degenerative changes and diagnosed her continued right hand pain as osteoarthritis. (Tr. 213-214).

The evidence as a whole shows Plaintiff suffered some pain in her right hand, right wrist, and feet, but is able to walk and perform fine and gross movements with her hands. Accordingly, Plaintiff has not met her burden of establishing her impairments meet the requirements of Listing 1.02. *See Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004).

### B. Polaski Analysis

In assessing a claimant's credibility, the ALJ is required to examine and to apply the five factors from *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). The factors to consider are: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *Polaski*, 739 at 1322.

When discounting a claimant's complaints of pain, the ALJ must make a specific credibility determination by discussing the *Polaski* factors, addressing any inconsistencies, and articulating the reasons for discrediting the testimony. *Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998). An ALJ is not required to methodically discuss each factor as long as the ALJ acknowledges and examines these factors prior to discounting the claimant's subjective complaints. *See Lowe v. Apfel*, 226 F.3d 969, 971-72 (8th Cir. 2000). As long as the ALJ properly applies these factors and gives valid reasons for finding a claimant's subjective complaints are not entirely credible, the ALJ's credibility determination is entitled to deference. *Id.*; *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). The ALJ, however, cannot discredit a claimant solely because the objective medical evidence does not fully support the claimant's subjective complaints. *Polaski*, 739 F.2d at 1322.

The ALJ cited and addressed the Polaski factors in the written decision, before discounting Plaintiff's allegations of disabling pain. In addition to a lack of support in the medical record, the ALJ identified Plaintiff's activities of daily living, conservative treatment, ability to work in the past with her conditions, and Plaintiff's testimony she only takes Aleve to treat her pain as factors suggesting Plaintiff's pain is not disabling. (Tr. 14-16). These were valid reasons for discounting Plaintiff's subjective complaints. *See e.g., See Lowe*, 226 F.3d at 971-972; *see also Wagner v.*

*Astrue,* 499 F.3d 842, 851-853 (8th Cir. 2007) (stating the ALJ appropriately highlighted the claimant's failure to seek ongoing treatment or take pain medications as facts inconsistent with disabling pain).

Accordingly, the undersigned finds the ALJ's credibility determination is based on substantial evidence.

## IV.   Conclusion:

Based on the foregoing, the undersigned finds that the decision of the ALJ, is supported by substantial evidence and should be affirmed.  A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**Dated this 27th day of August, 2015.**

/s/   Barry A. Bryant<br>
HON. BARRY A. BRYANT<br>
U.S. MAGISTRATE JUDGE